IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOAQUIN TAPIA-MARTINEZ,

         Petitioner,

    v.

JERI TAYLOR,

        Respondent.

Case No. 3:17-cv-01307-HZ

OPINION AND ORDER

Brian Patrick Conry
Brian Patrick Conry, P.C.
534 SW Third Ave., Suite 711
Portland, Oregon

      Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
James M. Aaron, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

      Attorneys for Respondent

HERNANDEZ, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his state-court convictions for Sodomy. For the reasons that follow, the Petition for Writ of Habeas Corpus (#32-1) is denied.

<u>**BACKGROUND**</u>

When CA was 12 years of age, she related to her grandmother that a man who had previously lived with the family had repeatedly sexually abused her when she was five years old. During the time of the abuse, CA and her family lived with several other families at the Wright Street home owned by Gabino Martinez and his wife, Adriana. CA's mother, Jennifer Martinez, routinely asked Adriana to babysit CA after school. Petitioner was also living in the home and did not work, leaving him as the only male in the home until the others came home from work. Trial Transcript, pp. 292-93. According to Jennifer, her children interacted with Petitioner "a lot" and spoke with him in broken English. *Id* at 299, 310.

When CA disclosed the abuse, she was able to provide a physical description of her assailant that included his hair style as a "buzz cut" and that he had a dimple on his chin. *Id* at 228-29. CA informed her grandmother of the room her assailant occupied as well as its contents, which included a glass table and a "big stereo." *Id* at 231-33, 281. She also claimed that

Petitioner spoke to her in broken English that "wasn't perfect" and "sounded funny." *Id* at 347, 376-77.

Jennifer found a picture associated with a drug arrest from the Wright Street home which represented an array of six or nine individuals. *Id* at 238. When CA saw the photographs, she "just gasped for air . . . and just started crying. And, 'That's him. That's him.'" *Id* at 288. CA had identified Petitioner as her abuser and, according to Jennifer, "Nobody pointed at the picture. Nobody wanted it to be him. He was family." *Id*. Based on CA's allegations, the Washington County Grand Jury indicted Petitioner on four counts of Sodomy in the First Degree and four counts of Sexual Abuse in the First Degree, the latter of which the State dismissed prior to trial. *Id* at 16; Respondent's Exhibit 110, p. 2.

At trial, the defense argued that CA's mother and grandmother tainted her identification. It theorized that CA had mistakenly identified Petitioner as her abuser, and pointed out another resident of the Wright Street home, Ricardo Martinez ("Ricardo"), was the more likely perpetrator despite the fact that Ricardo had, according to Jennifer, only lived at the home for a period of one month. Trial Transcript, p. 305. Ricardo was accused of sexually abusing his own minor daughter, IM. According to IM, her father and another man abused her at Ricardo's girlfriend's house beginning when she was four or five years of age. *Id* at 199-204. The defense also pointed out that Gabino had

been convicted of sexually molesting a teenage girl, and had been accused of molesting IM. *Id* at 633.

The defense also offered the testimony of Petitioner's cousin, Osvaldo Martinez ("Osvaldo"), to bolster its theory. Osvaldo testified that the bedroom CA identified as belonging to Petitioner at the Wright Street home was not, in fact, the bedroom Petitioner occupied.[1] He also testified that Petitioner did not speak English. *Id* 510. With respect to Ricardo, Osvaldo testified that he spoke English and that he did not work. *Id* at 512.

Petitioner took the stand at his trial and denied abusing CA. He claimed that he had never taken care of her, nor had he ever interacted with her. *Id* at 359. He asserted that he could not have interacted with her because he spoke only Spanish and had only ever heard CA speak in English. *Id* at 559-60.

A non-unanimous jury convicted Petitioner of three counts of Sodomy in the First Degree, and the jury acquitted him of the remaining Sodomy I charge where CA testified that she could only recall three discrete incidents of abuse. *Id* at 354-55, 667-669. As a result, the trial court sentenced him to consecutive sentences totaling 300 months in prison. *Id* at 698.

---

[1] The defense also wished to call Gabino, believing that he would testify much as Osvaldo did. Trial Transcript, p. 547. However, because Gabino was a suspect in IM's abuse, he expressed his intention to exercise his Fifth Amendment rights if called to testify. *Id* at 546. As a result, the defense never called him.

Petitioner directly appealed but, aside from an attorney fee issue not relevant to this habeas case, the Oregon Court of Appeals affirmed the trial court's decision without discussion. *State v. Tapia-Martinez*, 266 Or. App. 701, 338 P.3d 801 (2014). Petitioner sought review in the Oregon Supreme Court, which denied his Petition. 357 Or. 112, 346 P.3d 1213 (2015).

Petitioner next filed for post-conviction relief ("PCR") in Umatilla County. In his *pro se* PCR Petition, he alleged that his trial attorney performed ineffectively by not calling Adriana to testify because she would have established that Petitioner could not have molested CA. Respondent's Exhibit 109. The PCR court appointed counsel to represent Petitioner, and counsel filed an Affidavit stating that she had: (1) employed an investigator to speak with Adriana; (2) spoken with Petitioner by phone several times; and (3) met with Petitioner in person. Counsel did not believe that she could state a valid PCR claim on Petitioner's behalf so, consistent with the requirements of 138.590(5), she filed an Affidavit to this effect with the PCR court. Respondent's Exhibit 110. Counsel did, however, advise the PCR court that Petitioner had expressed a desire to file *pro se* claims by way of a *Church* motion.[2] It does not appear that Petitioner ever filed such a motion.

---

[2] In *Church v. Gladden*, 244 Or. 308, 311-21, 417 P.2d 993 (1966), the Oregon Supreme Court held that where a litigant wishes to pursue claims that his attorney refuses to pursue, he must inform the court of an attorney's failure to follow a legitimate request, and he may ask to have counsel replaced or ask the court to require the attorney to comply with the litigant's request.

The PCR court held a hearing where Petitioner advised it that he had hired another attorney to assist him with his case, but he was unable to identify that person. Petitioner also claimed that he had witnesses who never appeared in court that could have been helpful to his case. PCR counsel stated at the hearing that she tasked her investigator with meeting with Petitioner's family, and that she spoke with Petitioner's trial attorney about the witnesses Petitioner believed could have been helpful to his defense. According to PCR counsel, trial counsel had interviewed those witnesses despite Petitioner's assertion to the contrary, and PCR counsel, herself, did not believe the witnesses would have been helpful to the defense. Respondent's Exhibit 113.

The PCR court intended to dismiss the case, but deferred its dismissal for 30 days to allow Petitioner's new attorney to file a notice of appearance. When that did not happen, the judge dismissed the case for failure to state a claim. Respondent's Exhibit 112. No appeal is permitted from such a judgment of dismissal in Oregon. ORS 138.525(3).

Petitioner filed this 28 U.S.C. § 2254 habeas corpus case on August 22, 2017, and the Court appointed counsel to represent him. With the assistance of counsel, Petitioner argues that: (1) his trial attorney was ineffective for failing to present additional witnesses at trial who might have swayed the outcome of the case; and (2) his conviction by a non-unanimous jury

violates his Sixth and Fourteenth Amendment rights. Respondent asks the Court to deny relief on the Amended Petition because: (1) Petitioner failed to fairly present his ineffective assistance of counsel claims to Oregon's state courts, leaving them procedurally defaulted; (2) Petitioner is unable to excuse his procedural default through a showing of cause and prejudice; and (3) the Supreme Court's recent decision prohibiting non-unanimous jury verdicts does not entitle Petitioner to habeas corpus relief.

## DISCUSSION

### I.   Unargued Claims

With the assistance of counsel, Petitioner filed an Amended Petition in which he raises a variety of claims. While somewhat difficult to ascertain, in his briefing Petitioner argues that his non-unanimous verdict is unconstitutional (Ground III), trial counsel failed to call Adriana Martinez and Dr. Daniel Reisberg (Grounds IV(a-b)), and failed to call additional potential defense witnesses to testify regarding: Petitioner's lack of opportunity to abuse CA (Ground IV(c)(1)), Petitioner's lack of English speaking ability (Ground IV(c)(2)), CA's purported misidentification of Petitioner's bedroom at the Wright Street home (Ground IV(c)(3)), Petitioner's character for acting in a sexually appropriate manner (Ground IV(c)(4)), the lack of any interactions between Petitioner and CA (Ground IV(c)(5)), and the English speaking skills of other males living in the home (Ground

IV(c)(6)). Where Petitioner does not argue the merits of the remaining claims in his Amended Petition, he has not carried his burden of proof with respect to these unargued claims. *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (Petitioner bears the burden of proving his claims).

## II.  **Exhaustion and Procedural Default—IAC Claims**

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. *Rose v. Lundy*, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore,* 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, (1986)).

If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were actually considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Castille v. Peoples*, 489 U.S. 346, 351 (1989). In this respect, a petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state

procedural rule, or failed to raise the claim at the state level at all. *Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

In this case, Petitioner argues two general claims of ineffective assistance of counsel wherein he faults his trial attorney for not calling witnesses who, he claims, could have helped establish his misidentification defense. First, believes that Dr. Daniel Reisberg, a memory expert, could have cast doubt on CA's identification. He asserts that instead of calling Dr. Reisberg to provide expert testimony at trial, counsel sought to cross examine Detective Verboort and CARES interviewer Kimberly Goldstein about the reliability of the identification which led them to improperly vouch for CA's credibility. Second, he argues that trial counsel failed to call additional witnesses, principally Adriana Martinez, Serafin Martinez, and Maria Martinez, who could have helped establish that he was not the perpetrator. Where Petitioner did not present any claims during his PCR proceedings, and as the time for doing so has passed, these claims are procedurally defaulted.

Petitioner does not dispute that he procedurally defaulted these claims, but asks the Court to excuse his default because it arose directly from PCR counsel's ineffective assistance when she declined to present them. Traditionally, the performance of PCR counsel could not be used to establish cause and prejudice to excuse a procedural default. *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991) (only the constitutionally ineffective assistance of counsel constitutes cause); *Pennsylvania v. Finley*, 481 U.S. 551, 556 (1987) (there is no constitutional right to counsel in a PCR proceeding). However, in *Martinez v. Ryan,* 566 U.S. 1, 4 (2012), the Supreme Court found "it . . . necessary to modify the unqualified statement in *Coleman* that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." *Id* at 8. It concluded, "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.*

In order to establish cause to excuse his default pursuant to *Martinez*, Petitioner must show first that his underlying claim of ineffective assistance of trial counsel is substantial insofar as it has "some merit." Next, he must demonstrate that his PCR attorney was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984) for failing to raise the claim. "[T]o fulfill this requirement, a petitioner must not only show that PCR counsel performed deficiently, but also that this

prejudiced petitioner, i.e., that there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different." *Runningeagle v. Ryan*, 825 F.3d 970, 982 (9th Cir. 2017) (quotation omitted). Such a finding, of course, would necessarily require the Court to conclude that there is a reasonable probability that the trial-level ineffective assistance claim would have succeeded had it been raised. *Id*.

### A.  Dr. Reisberg

Although CA testified that the sexual abuse she suffered occurred while she was in kindergarten in 2004-2005, she did not report the sexual abuse until 2011. During the intervening period, she had repressed the memory. She did not recall the sexual abuse even when Petitioner moved in for short time with her family at their Tanasbourne home (after leaving Wright Street). She testified that it was not until she was either 10 or 11 years old, the memory of abuse "came up in my mind" and she "couldn't stop thinking about it." Trial Transcript, pp. 355-56. Petitioner contends that, as a memory expert, Dr. Reisberg could have testified in general terms that a repressed traumatic memory of sexual abuse would likely come flooding back into the victim's consciousness if she were forced to live with the perpetrator again.

Petitioner claims it is particularly perplexing that trial counsel did not call Dr. Reisberg because he had sought funds for

such a purpose. To establish that the omission was prejudicial, he points to Dr. Reisberg's writings on memory and testimony in other cases, and he reasons from these sources that Dr. Reisberg could have provided testimony that would have been helpful to the defense. He maintains that in lieu of calling Dr. Reisberg, counsel attempted to elicit testimony about false memories from Detective Verboort and CARES interviewer Goldstein, with the former expressing confidence in CA's identification and the latter calling it a "good, sound identification" that was not "soft" or "squishy." Trial Transcript, pp. 413-14, 467-68.

In the absence of a declaration from trial counsel,[3] it is not clear from the record why he declined to call Dr. Reisberg. Although counsel requested funds to retain Dr. Reisberg, it does not appear that this request was ever approved. Amended Petition (#32-1), p. 71. It also does not appear that Dr. Reisberg ever provided specific input as to this case other than advising trial counsel that he believed he could "be very useful to the defense at trial." *Id* at 70. Petitioner's speculation as to how Dr. Reisberg might have applied his expert knowledge to his case if called as a witness is not sufficient to establish prejudice. *Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001); *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997); *see also Dows v.*

---

[3] Counsel for Respondent contacted Petitioner's trial attorney, who is now employed by the Federal Public Defender, but trial counsel indicated that his current employer does not permit communications about former clients absent a court order. Sur-reply (#35), p. 7 n. 1. Respondent only intends to seek such an order if Petitioner is able to excuse his procedural default or if the Court orders an evidentiary hearing.

*Wood,* 211 F.3d 480, 486-87 (9th Cir. 2000) (Petitioner's self-serving affidavit regarding potential testimony of another is insufficient to prove ineffective assistance of counsel claim). Even if Petitioner's speculation based upon Dr. Reisberg's writings and involvement in other cases could be sufficient to establish prejudice, the sources Petitioner references to establish Dr. Reisberg's opinions generally date to after Petitioner's own trial.

Moreover, Petitioner's claim regarding Dr. Reisberg arises out of his belief that the trauma CA would have experienced by virtue of having to live with Petitioner at the Tanasbourne home would have necessarily triggered her repressed memory. But Jennifer testified that CA was mostly at her grandmother's home during the short time Petitioner lived at the Tanasbourne home. Trial Transcript, p. 319. Jennifer stated CA "was never really there when he was there" and Jennifer "c[ouldn't] remember times when [CA] was around him that time period." *Id* at 320. Jennifer actually kept CA's room set up for Petitioner to spend the night, and she could not think of a single night that both CA and Petitioner spent the same night at the Tanasbourne home. *Id*. In this respect, an expert on repressed memory opining on cohabitation as a traumatic trigger might not have been helpful given the unique facts of this case. For all of these reasons,

Petitioner fails to establish that his claim is substantial and is unable to excuse his procedural default.[4]

## B.  __Adriana Martinez__

Petitioner next claims that PCR counsel should have pursued a claim that trial counsel failed to call Adriana to support his defense of misidentification. PCR counsel instructed her investigator to contact Adriana, and Adriana provided information that, at first glance, appears to be beneficial to Petitioner's defense.[5] According to Adriana, she was tasked with babysitting CA at the Wright Street residence Monday through Friday between the hours of 6:00 a.m. and 3:00 p.m. from approximately 2003-2005. During that time frame, Petitioner lived in the home for what Adriana believed to be a period of more than one year. Adriana claimed that she never left CA alone, that CA never spent any time alone with Petitioner, she never left the house to run errands and, instead, always stayed at the house with CA until

---

[4] To the extent Petitioner argues that Verboort and Goldstein would not have had an opportunity to bolster CA's identification had counsel called Dr. Reisberg, this does not appear to be the case. The prosecutor elicited the testimony Petitioner finds objectionable from Verboort and Goldstein when Petitioner's attorney attempted to challenge the identification as the main thrust of the defense. Trial Transcript, pp. 413-14, 467-68. Dr. Reisberg's appearance challenging CA's identification would not have mooted this issue. To the extent Petitioner argues that the testimony of Verboort and Goldstein amounted to inadmissible vouching, the Oregon state courts disagreed as a matter of state law and the Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." _Bradshaw v. Richey_, 546 U.S. 74, 76 (2005).

[5] Adriana also prepared a Declaration for purposes of this case. Amended Petition (#32-1), p. 33. That Declaration was not available to PCR counsel when she made the decision not to pursue this claim, and Adriana does not state that PCR counsel and her investigator improperly reported her recollections from 2016.

Jennifer picked her up. Amended Petition (#32-1), p. 247. She claimed that she did not think Petitioner could have committed the crimes in question because CA was always within her eyesight, and she never witnessed any wrongdoing on Petitioner's part. *Id* at 248. She also stated that Petitioner occupied the bedroom next to the kitchen, not the bedroom at the back of the house as CA testified. *Id.*

Respondent asserts that PCR counsel reasonably declined to press a claim for failing to call Adriana as a witness because her testimony was essentially identical to that of her husband, Gabino. However, as mentioned earlier in this Opinion, although defense counsel intended to call Gabino to testify, it did not do so when Gabino expressed his intention to invoke his Fifth Amendment rights. Because Adriana's testimony could not have been cumulative of testimony Gabino never provided, PCR counsel could not have made a reasonable decision to refrain from raising a claim on this basis.

However, the timeframe Adriana claimed to have watched over CA during her interview with the PCR investigator does not match up with CA's allegations. Adriana's statements to the PCR investigator addressed only the time during which CA did not actually live at the Wright Street home. Specifically, Adriana claimed that Jennifer would drop CA off at the Wright Street home Mondays through Fridays at 6:00 a.m. and pick her up at 3:00 p.m. Adriana identified CA as being three years of age at the time. *Id*

at 248. By contrast, CA testified that when the abuse occurred: (1) she was five and six years old and attending kindergarten during the day; and (2) she and her family resided at the Wright Street home, something that would not have entailed Jennifer dropping her off with Adriana in the mornings and picking her up at 3:00. Trial Transcript, pp. 341-44, 355, 419; see also *id* at 270 (Jennifer testifies that her family was living in the Wright Street home while CA was in kindergarten).

Although there are no affidavits from trial counsel or PCR counsel regarding the decision not to pursue testimony from Adriana, PCR counsel's investigation revealed that Adriana was prepared to testify about the absence of abuse during a time frame that did not correspond to CA's allegations. In this respect, PCR counsel's performance did not fall below an objective standard of reasonableness when she concluded, after consulting with trial counsel and her own investigator, that she could not raise a viable claim based upon Adriana's recollections. Petitioner is therefore unable to excuse his procedural default as to this claim.

### C. __Serafin and Maria__

Petitioner also maintains that PCR counsel should have raised an ineffective assistance of counsel claim pertaining to trial counsel's failure to call Serafin Martinez and Maria Olivia Martinez. Serafin submitted a Declaration for this habeas corpus case where he claims that, had he been called as a witness, he

would have testified that he often visited the Wright Street home, Petitioner does not speak English unlike some of the other men who lived at the Wright Street home, Petitioner started living at the Wright Street home in May of 2005 or after, Ricardo and Gabino were both accused of sex crimes involving minors (Gabino was convicted), and the room CA identified as belonging to Petitioner was actually the room Gabino and his wife occupied at the Wright Street House. Petition (#32-1), pp. 20-24. Maria, who visited the Wright Street home once a month during at least a portion of the time Petitioner lived there, declares that she could have testified that she never heard Petitioner speak English, did not witness him interact with CA, and that he was sexually appropriate with children. *Id* at 27-30.

Serafin asserts that Petitioner moved into the Wright Street residence "sometime in May of 2005 or sometime thereafter." Amended Petition (#32-1), p. 21. Petitioner believes this was important to his case because his moving in coincided with the end of CA's abuse that she claimed terminated at the end of her kindergarten year. However, Serafin's recollection five years after Petitioner's trial, and as a non-resident of the home, is not at all consistent with, and less persuasive than, Jennifer's recollection. She testified in 2012 that Petitioner was already living at the Wright Street home when she and her children moved in, and he lived there during the time she and her family resided

there, which was approximately two years.[6] Trial Transcript, pp. 266-67, 270, 284, 303. But even assuming the jury would have credited Serafin's account regarding timing, Jennifer estimated that CA's kindergarten year ended between the middle and end of June 2005. Trial Transcript, p. 330. CA thought that the last of the three incidents of abuse she recalled ended close to the time she finished kindergarten, or possibly afterwards. *Id* at 355. Consequently, Petitioner's presence in the house beginning in May and the three incidents of abuse to which CA testified, even if they stopped when she finished kindergarten, could have overlapped by almost two months such that Serafin's timeframe would not have been strong evidence of Petitioner's innocence.

With respect to the remainder of Serafin's and Maria's Declarations, nothing constitutes new evidence that trial counsel did not offer, or that the State, itself, did not elicit. Moreover, trial counsel interviewed Serafin and Maria and determined that their testimony would not be helpful. Respondent's Exhibit 113, p. 3. PCR counsel spoke directly with trial counsel about these witnesses and, based upon that conversation as well as her own findings through her investigator, determined that they would not have assisted the defense. *Id*. Petitioner fails to establish how calling Serafin and Maria would have introduced evidence that could have produced a different result at trial. Accordingly, he cannot satisfy

---

[6] CA also testified that during her kindergarten year, Petitioner was living

either the performance or prejudice prongs of *Strickland* so as to excuse his procedural default under *Martinez*.

III.  **The Merits: Non-Unanimous Guilty Verdict**

    A.    **Standard of Review**

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and Petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct

---

in the Wright Street house. Trial Transcript, p. 341.

governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. Twenty-eight U.S.C. § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

B.  **Analysis**

In his remaining claim, Petitioner argues that his non-unanimous convictions violate his Sixth and Fourteenth Amendment rights. On April 20, 2020, the Supreme Court determined that the Sixth Amendment requires a jury to deliver a unanimous verdict in order to convict a criminal defendant of a serious criminal offense. *Ramos v. Louisiana*, 140 S.Ct. 1390 (2020). However, for almost 40 years prior to the *Ramos* decision, the Supreme Court's jurisprudence plainly provided that non-unanimous jury verdicts in criminal cases were permissible. *Apodaca v. Oregon,* 406 U.S. 404 (1972). Given this history, Petitioner cannot establish that Oregon's state courts unreasonably applied clearly established

Supreme Court law when they issued rulings consistent with *Apodaca* during Petitioner's direct appeal in 2014 and 2015.[7]

Although Petitioner also frames his claim as one of ineffective assistance of PCR counsel in violation of *Martinez*, *Martinez* is inapplicable where there is no procedural default to excuse. If Petitioner is attempting to assert that PCR counsel should have raised an ineffective assistance of trial counsel claim for failing to challenge the non-unanimous jury verdict, such a claim is meritless because counsel specifically raised such an objection. Trial Transcript, pp. 597-98. To the extent he faults PCR counsel for not attempting to re-litigate the direct appeal challenge, it would not only have been procedurally improper to do so under Oregon law, but *Martinez* does not serve to excuse a procedural default pertaining to anything except a claim of ineffective assistance of trial counsel. *See Davila v. Davis*, 137 S.Ct. 2058 (2017).

## IV.  **Request for Evidentiary Hearing**

In the caption of his pleadings, Petitioner asks this Court to conduct an evidentiary hearing. Due to the procedural posture of this case, Petitioner has been able to expand the record with

---

[7] The Court notes that in *Edwards v. Vannoy*, No. 19-5807, the Supreme Court is set to determine whether its decision in *Ramos* applies retroactively to cases on collateral review, but Petitioner does not ask to stay the action. Even assuming *Ramos* applies retroactively, it would not alter this Court's conclusion as to whether Oregon's state courts acted unreasonably given the state of the law as it existed during Petitioner's direct appeal. If the Supreme Court does determine that *Ramos* applies retroactively, Petitioner could move for leave to file a successive habeas corpus case. *See* 28 U.S.C. § 2244 (b)(2)(A).

additional evidence in an attempt to demonstrate the viability of his claims. The record is sufficiently developed to assess the Petitioner's claims, and his new evidence does not entitle him to habeas corpus relief such that further evidentiary development is not needed. Moreover, he has not identified what evidence of material import an evidentiary hearing would produce that he has not already provided through expansion of the record. Accordingly, to the extent Petitioner's request for an evidentiary hearing exceeds the scope of the expansion of the record that has already taken place, the request is denied. *See Schriro v. Landrigan*, 550 U.S. 465, 474-75 (2007); *Rhoades v. Henry*, 638 F.3d 1027, 1041 (9th Cir. 2011); *Gandarela v. Johnson*, 286 F.3d 1080, 1087 (9th Cir. 2002).

## CONCLUSION

For the reasons identified above, the Amended Petition for Writ of Habeas Corpus (#32-1) is denied. The Court does, however, issue a Certificate of Appealability as to Petitioner's claims of ineffective assistance of counsel pertaining to Dr. Reisberg, Adriana Martinez, Serafin Martinez, and Maria Martinez.

IT IS SO ORDERED.

DATED this ____9____ day of September, 2020.

_____
Marco A. Hernandez
United States District Judge

22 – OPINION AND ORDER